[No. A027522. First Dist., Div. Five. Jan. 30, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE RICHARD LEMA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to rule 976.1 of the California Rules of Court, only the statement of facts and part I of this opinion are certified for publication.

COUNSEL

Howard J. Specter, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Thomas A. Brady and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

LOW, P. J.—Defendant Joe Richard Lema was convicted by jury of assault with intent to commit rape (Pen. Code, § 220) and false imprisonment by violence. (Pen. Code, § 236.) The jury also found defendant used a firearm in the commission of these offenses. (Pen. Code, § 12022.5.) We affirm.

Mary B. met defendant in November 1982 and they began dating, but Mary B. terminated the relationship several times because of defendant's propensity to become physically abusive when angered. After one of their reconciliations they resumed sexual relations. Mary B. testified that they "did not agree that I was going to be his constant girlfriend" and Mary B. renewed a relationship with Ray C., a former boyfriend. On August 1, 1983, Ray C. spent the night at Mary B.'s house. Unbeknownst to Mary B., defendant had watched her residence and observed them in bed together.

Defendant unexpectedly arrived at Mary B.'s residence at 11:30 the next morning and stated he wanted to speak with her alone. She reluctantly left with him in his car because she wanted to avoid a confrontation in front of her eight-year-old son. After driving around San Jose, defendant drove out of town while Mary B. repeatedly asked defendant to take her home. Defendant stated that "he wanted to go up to the mountains and screw and stuff."

Defendant stopped the car and ordered Mary B. out. When Mary B. asked why, defendant replied, "I told you we were going to screw." Mary B. protested, and defendant gave her the choice of submitting to intercourse in the rocky area by the car or at the bottom of the hill. She agreed to go with him down the hill because she was frightened. Defendant retrieved a sleeping bag from the trunk and Mary B. observed him wrap a gun in it. When they got to the bottom of the hill, defendant instructed Mary B. to undress and orally copulate him. She complied out of fear. Defendant then had sexual intercourse with her. Mary B. testified that he pointed the gun at her and told her he was going to kill her.

The defendant produced a brown paper bag which contained towels, gloves and duct tape. He placed tape across Mary B.'s mouth, put the gloves on her hands, wrapped her feet with a towel and bound her hands and feet with the tape. He pulled a knife from the bag, placed it at her throat and

questioned her about her relationship with Ray C. It was at this point Mary B. learned defendant had observed her with Ray C. on the previous evening. Defendant threatened to slit Mary B.'s throat and then pulled what appeared to be an upholstery needle out of the bag and punctured her with it. He then tied a rope around her ankles which he draped over a nearby tree. Every time he asked her a question she refused to answer, he yanked on the end of the rope, suspending her in midair until just her shoulders were touching the ground. Mary B. agreed to tell him anything he wanted to know.

Defendant requested that she "give him two weeks" with no one else around. After defendant drove Mary B. back to San Jose, she went into hiding with friends and then reported the incident to police. The knife, the upholstery needle and duct tape were found at the scene. In a recorded telephone call, Mary B. spoke to defendant from the police station and arranged to meet him in a park, where he was later arrested.

Defendant testified that Mary B. willingly accompanied him on a trip towards Hollister to visit his cousin. En route they sought a place to make love, found a secluded spot by a stream and defendant carried Mary B. down the steep grade "piggyback" style. After Mary B. orally copulated defendant, they engaged in sexual intercourse. At about this time, he started "flashing back" on Mary B.'s infidelity with Ray C. Defendant grabbed a paper bag and filled it with a blunt-edged knife, duct tape and a needle used for leather and carpentry work. He asked who she was with the previous night and she replied, "Nobody." She tried to get away from defendant, but he grabbed her by the shoulders and pushed her down to the ground. Defendant produced the knife from the bag and stabbed it into the ground. He taped her hands and feet with the duct tape. "She wouldn't shut up" so he taped her mouth shut. When Mary B. indicated she would tell defendant who she was with on the previous evening, defendant removed the tape from her mouth. When Mary B. admitted she was with Ray C., he untied her hands and pulled the needle out of the bag, telling her, "[Y]ou are the kind of fucking whore who deserves to have her snatch sewed up." He then tossed the needle in the bushes. They began discussing their relationship and agreed to see each other exclusively for two weeks. Defendant testified that they returned to San Jose on amiable terms.

## I

██ Defendant contends the trial court had a duty, even over defense counsel's objection, to instruct the jury on the offenses of assault (Pen. Code, § 240) and battery (Pen. Code, § 242) as lesser included offenses of the crime of rape. (Pen. Code, § 261, subd. (2).) We disagree.

██ The court is required to instruct on lesser included offenses only when the evidence raises a question whether all the elements of the charged crime

have been proved and where a jury could reasonably find that the defendant committed the lesser but not the greater crime. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 324-325 [185 Cal.Rptr. 436, 650 P.2d 311].) However, instructions on lesser included offenses are not required when the evidence shows that, if guilty at all, defendant committed the greater crime. (*People* v. *Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893].) ▪ Defendant attempted to convince the jury that Mary B. voluntarily accompanied him to a secluded area where they engaged in consensual sexual activity. If believed, defendant's version of the events would operate as a complete defense to the charged offenses—rape, oral copulation by force and kidnapping. Under this theory, the court has no obligation to instruct on the offense of assault and battery since no evidence was presented by the defense that the offenses were less than those charged. (*People* v. *Barrick* (1982) 33 Cal.3d 115, 135 [187 Cal.Rptr. 716, 654 P.2d 1243].)

According to defendant's testimony, only *after* the consensual sex acts took place did defendant become enraged with jealousy and then bind and threaten Mary B. with a knife and needle. These acts could have constituted the offenses of assault and battery, but the prosecutor chose not to file those charges. Coincidentally, assault and battery constitute lesser included offenses of rape by means of force or fear. But under these circumstances, the subsequent assault and battery were *not* committed during the commission of the alleged rape and could not be considered a lesser offense to the rape charge. ▪ To require the court to instruct on an uncharged crime would deprive defendant of his right to adequate notice of the charges against him. (See *People* v. *Geiger* (1984) 35 Cal.3d 510, 530 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].)

▪▪ In any event, defense counsel expressly stipulated that the jury *not* be instructed on the offenses of assault and battery. Defense counsel's stipulation did not result from neglect or mistake. To the contrary, it appears that defense counsel's tactical purpose was to deliberately narrow the jury's choice of verdicts. Therefore, the doctrine of invited error precludes defendant from complaining on appeal he was prejudiced by the omission. (See *People* v. *Barnard* (1982) 138 Cal.App.3d 400, 409-410 [188 Cal.Rptr. 176].)

II-VI*

. . . . . . . . . . . . . . . .

Affirmed.

King, J., and Haning, J., concurred.

---

*See footnote *ante,* page 1541.